No. 30,547.

HERCULE PESSEMIER, *Plaintiff*, v. W. S. PLUMMER, as County Clerk of Pottawatomie County, etc., et al., *Defendants.*

(10 P. 2d 887.)

Opinion filed May 7, 1932.

*C. A. Leinbach,* of Onaga, and *Maurice Murphy,* of St. Marys, for the plaintiff.

*D. C. Hill,* of Westmoreland, and *W. F. Challis,* of Wamego, for the defendants.

The opinion of the court was delivered by

SLOAN, J.: This is an original proceeding in which the plaintiff asks for a writ of mandamus directing the defendants to levy a tax against certain property described in the petition sufficient to pay its proportionate share of certain bonded indebtedness.

A statement of the facts will disclose the legal questions involved.

Some time prior to August, 1930, rural high-school districts numbered nine and ten were organized in Pottawatomie county. Rural high-school district number nine was immediately to the west of district number ten. District number ten contained the village of Belvue and was known as the Belvue district. This district was subsequently enlarged so as to include the city of St. Marys and the surrounding territory. This took the control of the district from the village of Belvue to the city of St. Marys. On September 3, 1930, a petition was filed with the county superintendent, signed by seventy-three inhabitants of district number ten, asking that certain territory described in the petition be transferred from district number ten to district number nine, which contained the city of Wamego, and assigned as their reason for the request that better high-school facilities would be available to the children of the territory described in the petition. The county superintendent, on the filing of the petition and on September 10, 1930, issued a notice, and caused it to be published as provided by law, that the petition would be heard on October 4, 1930. On October 4, 1930, the parties in the territory appeared by an attorney, and those opposing the petition appeared by an attorney. The county superintendent took the matter under advisement and on October 9 denied the application for the transfer of the territory. On October 11, 1930, notice of appeal to the board of county commissioners was duly served. The county commissioners were in session and on October 16 the matter came on for hearing. The parties appeared by their attorneys and an extended hearing appears to have been had in which evidence was adduced on the part of the appellants. The board of county commissioners sustained the appeal and directed the county superintendent to make the transfer of the territory in accordance with and as provided by law. On December 12, 1930, the county superintendent complied with the order of the county commissioners. On October 17, 1930, a bond election was held in rural high-school district number ten for the purpose of voting $60,000 in bonds to build a schoolhouse. The bonds carried. The inhabitants of the disputed territory did not participate in the election. The bonds were dated November 1, 1930. They were afterwards duly registered with the county and state, sold, and the money received by the district about January 5, 1931. On January 7, 1931, rural high-school district number ten brought an action in mandamus against the board of county commissioners in the district court asking that the commis-

sioners be directed to hear and determine the appeal from the county superintendent. The case was tried March 6, 1931, and the court on the hearing found that the action of the board of county commissioners on October 16, 1930, was invalid for the reason that no sufficient notice of the hearing had been given as required by law. It ordered that the commissioners fix a time for the hearing of the appeal, and cause a notice to be published for two consecutive weeks, stating the time and place where said appeal would be heard. Thereafter, on April 7, 1931, in obedience to the order of the court, the county commissioners in regular session heard and sustained the appeal and ordered the county superintendent to take the necessary steps to transfer the territory described in the petition to district number nine. On May 1, 1931, the county superintendent caused a notice to be published changing the boundaries of the districts.

The question for our consideration is whether the bonds are a lien on the territory transferred from district number ten to district number nine, and whether the county commissioners are bound to make a levy on such territory to pay its proportionate share of the bond issue.

R. S. 10-119 provides as follows:

"Whenever a part of the territory of any municipality has been detached and attached to some other municipality, . . . such territory shall be liable for the payment of all bonds issued or other indebtedness incurred by such municipality before such detachment . . . and the proper taxing officers of the municipality to which such territory is attached shall levy such taxes upon such attached territory as are necessary to pay its proper proportion of the interest and principal of such bonds or other indebtedness as aforesaid, and such officers may be compelled by mandamus at the instance of the holders of such bonds or other indebtedness to levy such tax."

It is made the duty of the board of county commissioners in each county to levy an annual tax upon all taxable property in each district sufficient to pay the interest and bonds issued by such district at their maturity. (R. S. 72-2004; *Missouri, K. & T. Rld. Co. v. Hays*, 119 Kan. 249, 237 Pac. 1029.) It is clearly the duty of the board of county commissioners to levy taxes for the payment of bonded indebtedness in each taxing district, including territory which has been detached from such taxing district subsequent to the incurrence of the bonded indebtedness. This is apparently conceded by the defendants, but they contend that the proceedings to transfer the territory in question from district number ten were commenced and pending at the time the bonds were issued, and that by reason

thereof the lien cannot attach to the territory which was subsequently detached from the district. The application asking for the transfer of the territory was filed September 3, 1930. The county superintendent denied the application on October 9, 1930. An appeal was perfected within the time prescribed by law. The bond election was held October 17, 1930. The appeal was heard and determined by the board of county commissioners on April 8, 1931. The county superintendent did not comply with the order of the county commissioners until May 1, 1931, when the notices were posted defining the district boundaries.

Does the doctrine of *lis pendens* apply to this situation? We think not. The statute precludes its application. The lien created by the bond issue attaches, unless the territory has actually been detached from the district. (R. S. 10-119.) It must be held that the bond issue was at least completed when the proceeds of the sale of such bonds came into the hands of the school district, which, according to the record, was about January 5, 1931. At that time an appeal was pending from the order of the county superintendent denying the application. The territory was a part of district number ten and no valid order was made by the county commissioners until April 8, 1931. Whether the territory was transferred on the making of the order or on the posting of the notice by the county superintendent is not decided. It is sufficient for the purpose of this case to hold that the territory was not transferred when the bond issue became a lien on school district number ten. Under these circumstances it was the duty of the board of county commissioners to levy a tax on the territory in question sufficient to pay its proper proportion of the interest and principal of the bonds.

The writ is allowed.